UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEAVEN JOHNSON, CHRISTOPHER BURKE,<br>  Plaintiffs,<br><br>v.<br><br>STATE DEPARTMENT OF CHILDREN & FAMILIES, JOETTE KATZ (Official capacity), CHARLOTTE SCHMID (Individual capacity), MALCOLM BLUE (Official and individual capacity), GAYLE HOFFMAN (Official capacity), JEANNETTE PEREZ (Official and individual capacity), RAQUELINDA CABRAL (official and individual capacity), STEFFANIA HANNA (Official and individual capacity), MAUREEN AUGEUR (Official and individual capacity), DANA GOLDBERG (Official and individual capacity),<br>  Defendants. | 3:11cv996 (WWE) |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs allege racial discrimination and retaliation in employment by the Department of Children & Families ("DCF") and Joette Katz, Malcolm Blue, Gayle Hoffman, Jeannette Perez, Raquelinda Cabral, Steffania Hanna, Maureen Augeur, and Dana Goldberg, who are officials and employees of DCF, in violation of 42 U.S.C. §§ 1981, 1983, Title VII, and the Connecticut Constitution. Plaintiffs also allege state common law tort claims of intentional infliction of emotional distress.

Defendants have filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the following reasons, the motion will be granted in part and denied in part.

1

BACKGROUND

The following factual background is taken from the allegations of the complaint, which are considered to be true for purposes of this ruling.

Plaintiffs Johnson and Burke are African-American males who were formerly employed by DCF. They allege that they were disciplined and terminated for discriminatory reasons.

DCF initially rescinded an offer to hire Johnson after it learned that he had been arrested as a result of participating in a peaceful march and demonstration led by Reverend Jesse Jackson in support of striking workers employed by Yale University. Plaintiff filed a complaint with the Connecticut Human Rights Organization ("CHRO") asserting discrimination by DCF. Thereafter, DCF hired Johnson as part of a settlement agreement. Johnson began his training with DCF in July 2010.

Johnson alleges that the training class instructors made false complaints against him that he sighed loudly in class, texted on his cellphone during class, and that he fell asleep in class. After plaintiff informed his supervisor, Raquelinda Cabral, that he had sleep apnea, DCF forbad him from driving an automobile for the agency.

Three days after Johnson's attorney notified DCF in writing that these complaints constituted retaliation for his protected activity, Cabral gave Johnson an unsatisfactory rating. During this same period of time, Johnson was informed by his coworkers that his CHRO complaint was common knowledge.

In February 2011, plaintiff learned from one his clients that she had been involuntarily solicited by DCF social worker Charlotte Schmid to write a letter stating that the client wished to have him removed from her case.

On March 4, 2011, plaintiff filed a complaint of discrimination and retaliation with the CHRO against DCF. On March 31, 2011, plaintiff was given a written memorandum from defendants Blue and Hoffman, asserting that plaintiff had a problem connecting with his clients and had an unstable case load. Johnson wrote a rebuttal to the claims.

On May 5, 2011, defendant Jeanette Perez, DCF's Principal Personnel Officer, met with plaintiff to discuss concerns she had regarding his performance. On May 13, 2011, DCF terminated Johnson's employment.

Plaintiff Burke commenced his employment with DCF as a child services worker in July 2000. He was assigned to Riverview Hospital, a children's psychiatric residential treatment and evaluation program. On December 28, 2008, three female children at the hospital made a claim against Burke. DCF responded by engaging in an investigation that went far beyond the allegations made by the children. On March 18, 2009, Burke was terminated for alleged misconduct, including claims of neglect of duty and sexual harassment.

## DISCUSSION

A motion to dismiss under FRCP 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case before it." 2A James W. Moore et. al., Moore's Federal Practice, P 12.07, at 12-49 (2d ed.1994). Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779

(2d Cir. 1984). When deciding a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### **Eleventh Amendment**

In counts one and five, plaintiffs allege racial discrimination and unequal treatment in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. In count one, Johnson's claim is asserted against defendants DCF and Katz, Hanna, Auguer, Goldberg, Schmid, Hoffman, Blue and Perez in their official capacities; and in count two, Burke's claim is asserted against DCF and Welch, Wood and Partyka in their official capacities.

Generally, a suit for recovery of money damages may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). The Eleventh Amendment also bars actions for damages against state officials when the state is the real party in interest. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101 (1984).

A claim for prospective relief based on a violation of federal law against a state employee acting in his or her official capacity is not barred by the Eleventh Amendment

pursuant to the exception articulated by ex parte Young, 209 U.S. 123 (1908).

The parties appear to agree that to the extent that plaintiffs' claims against the state officials seek reinstatement of their positions at DCF, such claims are not barred by the Eleventh Amendment. However, plaintiffs' claims against DCF and any claims for monetary damages do not fall with the ex parte Young exception and will be dismissed.

**Section 1981 Claim**

In counts two, three, six and seven, plaintiffs allege violation of 42 U.S.C. § 1981 against the individual defendants in their individual capacities. Defendants argue that these claims should be dismissed because they should have been brought pursuant to 42 U.S.C. § 1983.

Section 1983 constitutes "the exclusive federal remedy for violation of rights guaranteed in Section 1981 violations by state governmental units." Jett v. Dallas Independent School District, 491 U.S. 701, 734 (1989). State actors sued in their individual capacities must be sued under Section 1983 for violations of the rights guaranteed by Section 1981. Hill v. Taconic Developmental Disabilities Services Office, 283 F. Supp. 2d 955, 957 (S.D.N.Y. 2003). Accordingly, these claims will be dismissed without prejudice with leave to replead pursuant to Section 1983.

Intentional Infliction of Emotional Distress

In counts four and twelve, plaintiffs assert that defendants Hanna, Augeur, Goldberg, Schmid, Cabral, Hoffman, Blue, Perez, Welch, Wood and Partyka are liable for intentional infliction of emotional distress in their individual capacities. Defendants argue that the individual defendants are entitled to immunity pursuant to Connecticut

General Statutes § 4-165.

Section 4-165:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment.

Allegations of a defendant's misuse of governmental authority for personal gain or pursuant to improper and self-serving motives are sufficient to assert that a defendant's conduct is outside the scope of employment. Martin v. Brady, 261 Conn. 372, 378 (2002). For conduct to be considered wanton, reckless, wilful, intentional and malicious for purposes of Section 4-165, a defendant must have acted with a reckless disregard of the just rights or safety of others or of the consequences of the action or an extreme departure from ordinary care in a situation where a high degree of danger is apparent. Stanley v. Muzio, 578 F. Supp. 2d 443, 446 (D. Conn. 2008). For purposes of ruling on this motion to dismiss, the Court need not consider whether plaintiffs have established immunity pursuant to Section 4-165 because the plaintiffs have failed to state a plausible claim of intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does cause, mental distress of a very serious kind. DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991). Connecticut courts have narrowly defined the boundaries of extreme and outrageous conduct. See Grasso v. Connecticut Hospice, Inc., 138 Conn. App. 759, 2012 WL 4872783, *8 (Oct. 23, 2012) (citing cases finding no intentional infliction of emotional distress). In the employment context, an employer's routine adverse

6

employment action, even if improperly motivated, does not constitute extreme and outrageous behavior unless conducted in an egregious and oppressive manner. Sousa v. Rocque, 2012 WL 4967246, * 7 (D. Conn. Oct. 17, 2012). Connecticut superior courts have held that a defendant's allegedly false reporting of an employee's conduct does not rise to the level intentional infliction of emotional distress. See Gillians v. Vivanco-Small, 128 Conn. App. 207, 213, cert. denied, 301 Conn. 933 (2011) (no claim for intentional infliction of emotional distress based on allegations that defendant co-workers conspired to create hostile work environment including falsely accusing plaintiff of racial and sexual bias and giving negative performance); Tracy v. New Milford Public Schools, 101 Conn. App. 560, 569, cert. denied, 284 Conn. 910 (2007) (defendants who harassed, intimidated, defamed and then disciplined plaintiff without proper investigation did not engage in extreme and outrageous conduct).

Johnson alleges that defendants made false accusations concerning his sighing, texting and sleeping in training; solicited negative letters about him from a client; criticized his performance and interaction with his clients; gave him negative performance reviews; and terminated his employment. Burke alleges that defendants conducted a far reaching investigation beyond the scope of claims made against him and terminated his employment. These allegations do not rise to the level of extreme and outrageous conduct exceeding all boundaries of decent society. Accordingly, the motion to dismiss will be granted on counts four and twelve.

**Connecticut Constitutional Claims**

In counts eight and nine, Johnson asserts claims of racial discrimination and retaliation pursuant to Article First, § 20 of the Connecticut Constitution against

individual defendants in their official capacities.  In counts ten and eleven, Burke alleges racial discrimination and retaliation in violation of Article First, § 20 against individual defendants in their individual capacities.  Plaintiffs' opposition brief indicates that plaintiffs seek prospective rather than monetary relief.  Defendants argue that the claims must be dismissed pursuant to Eleventh Amendment and for failure to state a claim.

The claims against the individual defendants in their official capacity will be dismissed pursuant to the Eleventh Amendment.  The Supreme Court has stated that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."  Pennhurst State School & Hospital, 465 U.S. at 106.  Accordingly, the Eleventh Amendment precludes adjudication of plaintiff's state constitutional claim for prospective relief.  Alliance of American Insurers v. Cuomo, 854 F.2d 591, 604 (2d Cir. 1988).

District courts have differed in the application of the Eleventh Amendment to individual capacity state law claims for prospective relief against state actors.  See Sank v. City University of New York, 2002 WL 523282, *9 (S.D.N.Y.) ("The Eleventh Amendment does not bar State law claims against State officials in their individual capacities that seek . . . prospective injunctive relief."); and Taylor v. Alabama, 95 F. Supp. 2d 1297, 1321 (M.D. Ala. 2000).  The Court need not resolve this issue because the individual capacity claims may be dismissed for failure to state a claim.

Plaintiffs argue that the Court should recognize a cause of action based on Article First, § 20.  The factors to be considered include (1) the nature of the constitutional provision; (2) the nature of the alleged unconstitutional act; (3) the nature

8

of the harm; and (4) the separation of powers. Binnette v. Sabo, 244 Conn. 23, 48 (1998). Generally, with due deference to the principle of separation of powers, courts should be reluctant to create a cause of action for an injury where the Connecticut legislature has already enacted a legislative scheme providing for adequate statutory remedies. Kelly Property Development v. Lebanon, 226 Conn. 314, 339 (1993).

Article First, § 20 provides that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color ancestry or national origin." Plaintiffs allege unconstitutional discrimination and retaliation in employment with resulting humiliation, emotional distress, harm to the plaintiff's reputation, and job and income loss. The Connecticut legislature enacted the comprehensive statutory scheme of the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60, to provide a remedy for claims such as plaintiffs. Accordingly, the Court will join the numerous courts that have declined to recognize a private right of action pursuant to Article First, § 20. See Marshall v. Town of Middlefield, 2012 WL 601783, *9 (D. Conn.) (citing cases). Counts eight, nine, ten and eleven will be dismissed.

### Title VII

In counts thirteen and fourteen, plaintiffs allege violation of Title VII. Defendants argue that these claims must be dismissed for failure to sue within the requisite 90 days of receipt of the right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). To maintain a timely action under 42 U.S.C. § 2000e-5, a plaintiff must file the action within 90 days of receipt of the right-to-sue letter. Sherlock v. Montefiore

Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).  The 90-day filing requirement serves as a statute of limitations.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).  The limitations period is subject to equitable tolling in exceptional circumstances in which a party is prevented in some way from exercise of his or her rights.  Zerilli-Edelglass v. New York Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003).  Equitable tolling does not apply to circumstances attributable to a lack of due diligence.  Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990).

Here, there is no claim that plaintiff Burke obtained a right to sue letter.  Accordingly, to the extent that any of the Title VII claims pertain to him, such claims will be dismissed.

On March 20, 2012, the EEOC issued a right-to-sue letter for plaintiff Johnson that was sent to his counsel's address.  On April 16, 2012, the right-to-sue letter was returned to the EEOC as unclaimed.  On June 22, 2012, counsel for plaintiff Johnson requested a second right-to-sue letter.  The amended complaint asserting Title VII claims was filed on July 7, 2012.  The EEOC issued a second right-to-sue letter dated July 10, 2012.

The plaintiff has the responsibility to provide the EEOC with the proper address and notice of any prolonged absence from that address so that he or she can be located when necessary during the EEOC's consideration of the charge.  29 C.F.R. § 1601.7.  Thus, a plaintiff bears the burden to ensure actual receipt of the right-to-sue letter. O'Neal v. Marine Midland Bank, N.A., 848 F. Supp. 413, 418 (W.D.N.Y. 1994) (citing cases).  Here, plaintiff has offered no reason why the first letter went unclaimed.

Accordingly, the Court cannot find a basis for equitable tolling and the Title VII claims brought by Johnson will be dismissed.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED with the exception of the claims for prospective relief in counts one and five. Counts, two, three, six and seven are dismissed without prejudice. Plaintiffs are instructed to file an amended complaint consistent with this ruling within fifteen days of this Ruling's flng date.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE


Dated at Bridgeport, Connecticut this __4_th day of December, 2012.